JOYNES, J.
This case depends upon the construction of a clause in the will of George Ritzhugh, who died in or about the year 1823, which clause is in the following words: “I give to my son, Henry Ritzhugh, the sum of one thousand pounds, Virginia currency, in trust, that he shall apply the interest and profits thereof towards the support and maintenance of my daughter Ann Baylor, to her sole and separate benefit, free from the debts, contracts or control of her husband, during her natural life, and after her decease, to divide the principal equally amongst her children and their representatives, according to the statute of distributions; and I hereby authorize my said son, his executors or administrators, to invest the said sum of money in any government or bank stock, the profits and principal of which to be disposed of in like manner as the interest and principal of the said sum is hereby directed; and I do further empower my said son, with the consent of my said daughter, to vest the said sum of money or stock in land, which shall be settled and applied in the same manner as the said money or stock is directed. ’ ’
At the death of the testator, Mrs. Baylor had five children, and does not appear to have had any children *born after that time. She lived until 1861, and survived all her children except Mrs. Brent, the wife of the appellant. Rirst, her son Nathaniel died, unmarried. Then Mary D., who had intermarried with Temple M. Washington, died, having had two children, one of whom died before her, and leaving the other child and her husband surviving her. The other child died soon after, leaving the father surviving, who died in 1863. I infer that both children died unmarried and without issue. Ranny died next, unmarried, and, I infer, without issue. Then Eliza died, who had intermarried with Joseph Horner, and had children, leaving her husband and children surviving her, all of whom, with him, survived Mrs. Baylor.
The bill in this case is filed by Malcolm B. Washington, as administrator of Temple M. Washington, and also as administrator of Mary D. Washington. Brent and wife, and Joseph Horner, in his own right, and as administrator of his wife, together with other parties responsible for the fund, are made defendants. The defendants demurred to the bill. The court overruled the demurrer, and proceeding at once to render a decree, held, in effect, that each child of Mrs. Baylor took, at the death of the testator, a vested interest in remainder in one-fifth part of the trust fund, and that the plaintiff, as administrator of Temple M. Washington, was entitled to Mrs. Washington’s share of the fund. An account of the fund and its distribution was directed, and by a subsequent decree the report was confirmed, which gave the share of Mrs. Horner to her husband.
The general rule is, that when property, real or personal, is given by will to one for life, and afterwards to his or her children, the children, if any, living at the death of the testator, take vested interests in remainder, which are liable to be divested pro tanto, so as to let in any other children that may be born during the life of the ^tenant for life. Upon the death of any of the children before the life tenant, their interests devolve upon their representatives; that is to say, in the case of land, upon the heirs or devisees; and in the case of personal property, upon the executors or administrators. And such undoubtedly would have been the construction in this case, if the words, “and their representatives according to the statute of distributions,” had been omitted. There would then have been nothing from which an argument could be drawn in favor of regarding the interests of Mrs. Baylor’s children as contingent, except that the gift to them is in the form of a direction to divide the fund among them after the death of Mrs. Baylor. But the distribution was obviously postponed for no other purpose than to give precedence to the life interest of Mrs. Baylor. The gift is in substance a gift to the children, subject to the interest of Mrs. Baylor; the title is conferred immediately, though the enjoyment in possession is postponed. When the postponement of distribution is thus made only *703 to give precedence to another interest, Jar-man says that the legacy will be held to be vested, notwithstanding the gift is in the form of a direction to divide among the objects at the prescribed period. 1 Jarm. on Wills, Eld. 1861, 798. This opinion of Jarman was approved in Packham v. Gregory, 4 Hare’s R. 396; and is supported by the decisions of this court in Rowlett v. Rowlett’s ex’ors, 5 Leigh 20; Hansford v. Elliott, 9 Leigh 79; and Martin, adm’r, &c., v. Kirby, adm’r, &c., 11 Gratt. 67. See also Smith v. Palmer, 7 Hare’s R. 225.
The primary sense of the word “representatives,” when used in a bequest of personal property, is the same as that of ‘ ‘legal representatives” or “personal representatives.” Elach of them is equivalent to executors or administrators. 2 Wms. on Ex’ors, 966-970 ; 2Redfield on Wills, 402-408. If the words, “and their representa-lives,” in *this case had stood alone, they would probably have been construed as words of limitation, intended only to describe the interest taken by the children, as in Price v. Strange, 6 Madd. R. 159, and Taylor v. Beverly, 1 Collier R. 108.
But this primary sense of the word “representatives” may be controlled, where an intention is clearly indicated to employ it in a different sense. In the books cited many cases are collected in which this has been done. Sometimes it has been held to mean next of kin according to the statute, and sometimes to mean descendants, according to the intention to be gathered from the whole will. In the present case, the sense in which this word is employed is explained by the addition of the words, “according to the statute of distributions.” There is no room for construction. The words, according to their plain and necessary interpretation, describe those who are entitled to take the personal property of the children after their death, according to the statute of distributions; that is to say, the distributees. And the statute must be referred to, to ascertain the persons who are to take and their respective shares. Houghton v. Kendall, 7 Allen’s R. 72, and cases cited. And the persons thus described take, under the gift, as purchasers. They are, in the events contemplated, direct objects of the gift. These words cannot be construed -as words of limitation merely, for personal property, on the death of the owner, does not devolve upon the distribu-tees, but upon the executor or administrator. And they cannot be construed as denoting children or descendants only. They describe all who represent the children according to the statute, whether descendants, or ancestors, or collateral kindred. There is nothing in the context to authorize us to restrict their meaning to any particular class of such representatives.
That the primary sense of the word “representatives” is thus controlled, and its meaning explained by the reference *to the statute of distributions, seems obvious enough upon the interpretation of the language, and it is confirmed by the opinion of Mr. Roper in 1 Roper on Regacies 130, 131, and by the cases of Cotton v. Cotton, 2 Beav. R. 70; Booth v. Vicars, 1 Collier R. 6; Smith v. Palmer, 7 Hare’s R. 225; and Wilson v. Pilkinton, 11 Jurist 537; and also by the decision of this court in Dickinson v. Hoomes, 1 Gratt. 302.
It is obvious that these ‘ ‘representatives according to the statute” are not to take during the lifetime of the children of Mrs. Baylor, whom they are to represent. That would be impossible; for, in the nature of things, these children must be dead before they can have such representatives. The only construction which the words will admit of is, that the representatives are to take in the place and stead of the children, in case any of the children should die in the lifetime of Mrs. Baylor. The language must be construed as if it had been, “children who may be then living, and the representatives, according to the statute of distributions, of such of the children as may have previously died,” or as if it had been, “children, or their representatives according to the statute of distributions,” merely changing “and” into»“or,” which is often done when the intention plainly requires it. See Dickinson v. Hoomes. In re Merrick’s Trusts; and Martin v. Holgate, cited hereafter. This substituted limitation in favor of the representatives of the children operates, in technical language, as a “conditional limitation,” defeating the remainder limited to the children before its natural expiration. 2 Washburn Real Prop. 226; Ib. 251; Smith on Executory Interests 55. The limitation to the representatives is, of course, contingent until the death of the children, in whose place they take.
In Girdlestone v. Doe, 2 Sim. R. 225, the testator bequeathed ,£40 per annum to Mary Tattershall for life, *and after her decease to James Holman, “or his heirs.” It was held, that these words created a substitutional gift in favor of the next of kin of James Holman, in case he should die in the lifetime of Mary Tat-tershall. In Jones v. Torin, 6 Sim. R. 255, the bequest was in trust for A for life, and immediately on her decease for the children “or their descendants” of B and C in such proportions as A should by will or other written declaration during her lifetime direct. A died without making any appointment. It was held, that the ‘ ‘descendants” were mentioned only as substitutes for the children, and that the fund belonged to the children of B and C, to the exclusion of their issue. Other cases of the same sort might be cited from the English reports. So in Dickinson v. Hoomes, 1 Gratt. 302, where the testator gave an express estate in fee in real and personal property to each of his five sons, and then directed that if any or either of said five children should die without issue living at his death, all the estate real and personal of such child should be divided equally between the survivors “or their representatives according to the principles of the law of descents,” it was held that, upon the- *704 death of one of the children without issue, the property passed to the surviving children and the representatives of such as were dead, the latter taking as purchasers under the will the share which the parent would have taken if alive. In Martin, adm’r, &c., v. Kirby, adm’r, &c., 11 Gratt. 67, the testator gave all his estate, real and personal, to his wife for and during her widowhood; and directed that at her death all his estate should be sold and equally divided between all his surviving children, “or their. heirs. ” It was held, that the words “or their heirs” were intended to provide for the children or descendants of such of the testator’s children as might die in the lifetime of the tenant for life. See also Chew’s Appeal, 37 Penn. St. R. 23, and Stevenson v. Evans, 10 Ohio R. *N. S. 307, which are other instances of such a limitation. In all these cases the substitutional gifts were introduced by the word “or.” But the same construction will be made, • though “and” is used instead of “or,” where the intention requires it. Thus in Tucker v. Billing, 2 Jurist N. S. 483, the testator bequeathed the residue of his property, after the death of his widow, to the brothers and sisters of her and himself, “and to their descendants,” and the court held, that the persons entitled to the property were those brothers and sisters of the testator and his wife- who were living at the death of the tenant for life, and the children of such of them as were then dead, who were entitled to take by way of substitution to their parents. I find the case of Burrill v. Baskerfield, 11 Beav. R. 534, referred to as a case in which such a substitutional gift was likewise introduced by the word “and,” but I have not been able to see the case itself.
In this class of cases the word “or,” or the word “and” used in the sense of “or,” introducing a substitutional gift, is tantamount to the words “in case of the death.” 2 Jarman on Wills 710. The class of cases in which this latter form of expression occurs may be referred to, therefore, to illustrate the construction of such bequests. In Harvey v. McLaughlin, 1 Price’s R. 264, the bequest was of certain sums of stock to a trustee in trust to pay the dividends to Eleanor Todd for life, with remainder, as to the capital, to be equally divided among the said Eleanor Todd’s three children; and in case of the death of either of them, the share of such as might die was to go to and belong to the children or the child, if but one, of the persons so dying. One of the three children survived the testatrix, and died in the lifetime of the legatee for life, leaving children. The court established the title of the children of the deceased child under the executory limitation, holding that the intention was to substitute the children of *'those dying in the lifetime of the legatee for life in place of their parents, and that the parents took vested interests at the death of the testatrix, subject to be divested in the event specified. See 1 Roper on Begacies 611-613, where other cases of the same sort are cited. So in Martin v. Kirby, before mentioned, it was held, that the children of the testator took vested interests, (the words “surviving- children” being construed to refer to children who survived the testator), though their interests were liable to be divested upon the death of any of the children, in the lifetime of the widow, leaving children or descendants. See also Smith v. Palmer, 7 Hare’s R. 225.
In every such case it is true that the first legatee is not to take the property in possession unless he shall be alive at the period of distribution. But it does not, as the cases cited show, follow from this that the interest does not vest immediately. ‘ ‘It is not the uncertaintjr of ever taking effect in possession that makes a remainder contingent.” * * “The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent.” Pearne216. “It shoüld be remembered that no degree of uncertainty as of the remainderman’s ever enjoying the estate which is limited to him by way of remainder will render such remainder a contingent one, provided he has, by such limitation, a present absolute right to have the estate the instant the prior estate shall determine.” 2 WashburneReal Prop. 227. And the construction is the same in this respect, in cases where there is a sub-stitutional limitation, as in cases where there is none. The only difference is, that in the former the vesting is conditional, and liable to be defeated, while in the latter it is absolute and indefeasible.
*1 conclude, therefore, that upon the death of the testator, each of the five children of Mrs. Baylor took a vested interest in remainder after her death, in one-fifth part of the trust fund, liable to be divested upon the death of such child in the lifetime of Mrs. Baylor. The next question is, whether the interest thus divested remained contingent until the death of Mrs. Baylor, and vested then in such persons as represented the deceased child at that time, according to the statute of distributions, or whether it vested, at the death of such child, in such persons as were then dis-tributees, as their absolute property. I think the latter is the true construction, and it is in accordance with the authorities. The rule is thus laid down by Redfield: “Where a life estate is created, and after its expiration the estate is devolved upon J S, and in case of his decease before the termination of the life estate, it is provided the same shall go to his legal representatives, and J S dies during the life of the tenant for life, the estate being personal, it will go to the persons who will be entitled under the statute, as next of kin of J S, who take vested interests as of the death of J 8." 2 Redfield on Wills 414. Eor this he cites Smith v. Palmer, 7 Hare’s *705 R. 225; Gundry v. Pinninger, 14 Beav. R. 94, (which I find in 9 Eng. L. & Eq. R. 143), and Walker v. Marquis of Camden, 16 Sim. R. 329; and they fully sustain the doctrine as he states it. There are some remarks of the Master of the Rolls in Gundry v. Pinninger which have a pertinent application to this case: “I never accurately understood the meaning of the words ‘the next of kin’ to be ascertained at any period different from that at which the 'person himself dies; ‘next of kin’ are words having a distinct and legal meaning, which do not point to persons who are different persons at different times, but point to persons who must be ascertained at a future period, namely, on the 'death of the person to whom they are to be next of kin. *And, therefore, if you say next of kin of a person at a period when he did not die, you really are using words with no sensible meaning or expression; but you ought to make them sensible by saying persons who would have been his next of kin if he had died at a period after that when he did die. This is giving a very peculiar and strong force to words which I do not think there is any rule of law to justify.” So, in the present case, the words “their representatives according to the statute of distributions,” naturally import those who did actual^ represent the deceased children at the time of their death, and not those who would have represented them if they had died at a different time, namely, immediately before the death of Mrs. Baylor. And it must be observed, that while the interests of the children are to be divested in case of their dying in the lifetime of Mrs. Baylor, no such provision is made in respect to the distributees.
Questions of an analogous character have frequently arisen in England within the last twenty years, where the substituted limitation was to “children,” and, under different forms of disposition, have been the subject of much difference of opinion. The cases, up to a recent period, are cited, and the conflict between them exhibited in 2 Redfield on Wills, 374-376, note. In one of the most recent cases, decided in 1865, Re Turner, 5 Am. E. Reg. JKT. S. 235,' holding the doctrine maintained by most of the judges, and finahy established, the testator bequeathed ,£500 in trust for his daughter for life, and directed that if she should die without issue (which she did), the fund should be paid to his four sons, share and share alike: but in case any or either of his sons should be then dead, he directed that the share of him or them so being dead should be paid to his or their child or children, share and share alike. It was held by Vice Chancellor Kindersley, that only such children of the testator’s sons as survived *their parents could take, but that it was not necessary that such children should also survive the tenant for life. The same judge had shortly before made a like decision in Lamphear v. Buck, 5 Am. L. Reg. N. S. 224, where the subject is fully discussed. Vice Chancellor Wood made a similar decision in the case of Merrick’s Trusts, 1 Law Rep. Eq. 552. The substance of the decision on this point is thus stated in the syllabus: ‘ ‘Where there is a gift by will upon the death of A to B, and if B shall be then dead, to B’s children, if B dies before A, it is not necessary that B’s children should survive A in order to entitle them to a vested interest. ’ ’ In the course of his opinion, the Vice Chancellor said: “As regards the parent, the testator feels that if the parent lives to take the property, the children, through the parent, will have the benefit of it. If he dies, the testator wishes the children to have the direct benefit of the property; and supposing these children (as is often the case under these limitations), to attain an age when they marry and are launched in life, the testator has not expressed any opinion adverse to their having the benefit of the property (taking it by way of vested interest or remainder), which they would have derived directly through their parent, if their parent had lived to take it.” In Martin v. Holgate, 1 Law Rep. H. L. 175, S. C. 44 Law Jour., Eq. 782, decided by the House of Bords in 1866, the testator gave his residuary estate to trustees in trust to his widow for life, and after her death for distribution among such of his five children as should be living at the time of her death, in equal shares ; but if any of them should be then dead, leaving issue [construed tornean children], such issue to be entitled to their father’s share. One of the nephews died in the life of the widow, leaving issue one daughter, who also died before the widow, and, therefore, before the period of distribution. It was held that the condition [of ^surviving the widow] which was annexed to the contingent gift to the parents, was not to be extended by implication to the gift to the issue, and that the daughter of the deceased nephew dying before the period of distribution, took a vested immediate interest in the share which her father would have taken, if alive at that period, although the amount of it could not be ascertained until the arrival of that period.
The authorities which have been cited establish, that even if the interests of Mrs. Baylor’s children could be regarded as contingent (which is not a question of any practical importance in the case), the interests of their distributees, under the substituted limitation, would be held to be vested and absolute on the death of the children, subject only to the life interest of Mrs. Baylor, and that this would be so, even if the substituted limitation had been to “children,” which might imply that the objects were to answer that description at the period of distribution.
The question then arises, whether the interest of Mrs. Washington vested, on her death, in her husband or in her child. The same question arises in respect to the interest of Mrs. Horner. As the law was in 1835, when Mrs. Washington died, the hus *706 band was not the distributee of the wife, according to the statute of distributions.
He tool? the personal property of the wife as her administrator, and kept it because relieved from the duty of making distribution like other administrators. Thus, he was the distributee, in effect, though not in form. The children were not distribu-tees, either in effect or in form. We cannot give the words of the will effect, according to their literal meaning. If we hold the husband entitled, we give the property to the party who is substantially the distribu-tee, though not so under the statute. If we give it to the children, we give it to those who could not take it from the mother, under the statute, or otherwise, and construe the *words not in their literal sense, but as meaning those who would have represented the mother, under the statute, if she had not been a married woman.
I am of opinion, therefore, that the interests of Mrs. Washington and Mrs. Horner passed, on their death, to their respective husbands.
It may be objected that the construction which I put upon this will involves consequences inconsistent with the probable intention of the testator, as, for instance, that on the death of any of the children of Mrs. Baylor in' the lifetime of their father, their shares might have passed to him; while the testator, by giving to Mrs. Baylor a separate estate, has shown an intention to exclude him altogether. Such possible disappointments of what may be supposed to have been the wish' and expectation of the testator, may occur in every case of a vested interest in remainder, and are always urged as an argument against holding the interest to be vested. They were so urged in Hansford v. Elliott, by the dissenting judge. But this argument was not sufficient in that case, and is not sufficient in this case, to overrule the import of the language, and the rule which requires that a legacy should be held to be vested rather than contingent, when the language will allow it.
The decree of the District Court was, therefore, right .upon the merits. It only remains to require whether the court erred in overruling the demurrer, or in proceeding to render a decree without giving a rule upon the defendant to answer the bill, as provided by chap. 171, sect. 32 of the code.
The plaintiff being entitled to sue in the character of administrator of Temple M. Washington, the only question upon the demurrer is, whether his joining as plaintiff in the further character of administrator of Mrs. Washington, affords ground for sustaining the demurrer. He *was seeking, in both characters, the recovery of the same interest, and for the same beneficial party. There was no joinder of distinct or conflicting -demands. The plaintiff sued in both characters, in consequence of the doubt which existed as to the true construction of the will. If another person had been the administrator of Mrs. Washington, he might have joined as a defendant, and so the plaintiff might have made himself a defendant in his character as her administrator. I think, therefore, that his joining as a co-plaintiff in that character was no ground of demurrer.
When a demurrer to a bill is overruled, the defendant is entitled to file his answer. But in this case the defendant did not ask leave to file an answer, and it is evident, from the nature of the case, and from, the facts as they appear in the report of the commissioner, that he did not have any reason for doing so. In Reynolds v. Bank of Virginia & als., 6 Gratt. 174, the court, upon overruling the demurrer, the defendant, as in this case, being already in default for want of an answer, and not asking leave to file an answer, proceeded at once to make a decree; and this court held that there was no error. The statute upon which that case arose was that of 1826 (Supp. R. Co. 130) ; but its provisions were substantially the same as those- of sections 32 and 34 of chap. 171 of the Code. The case is, therefore, an authority upon the construction of these sections.
I am of opinion to affirm the decree.
RIVES, J., concurred in the opinion of Joynes, J.
MONCURE, P., dissented.
Decree affirmed.