Joynes, J.
The original bill prays that the executors of Nicholas Mills, deceased, may ’ be required to render an account of all their actings and doings as such executors, and that all questions arising upon the construction of the will of the said testator may be adjudicated and settled by the court; and for general relief, &c.
The bill specifies but one complaint against the conduct of the executors: that is contained in the allegation, that the estate in Caroline has been neglected and mismanaged. This complaint is made the subject of comment in the answer of the executors; but after that, we see no more of it throughout the whole progress of the case. The executors exhibit with their answer accounts of their transactions, which had been duly settled, returned, and recorded according to law. Anticipating, however, as it would seem, what parts of their administration were to be made the subject of complaint, though none of them, with the unimportant exception already mentioned, had been specified in the bill, the executors proceed in their answer to give a minute history of those transactions, and to make a general vindication of their administration.
*465 The executors might have objected to an overhauling of the transactions embraced in their settled accounts, except so far as they might have been open to objections apparent on their face, on the ground that there was no specification of errors in the bill. It is a familiar principle, that the accounts of an executor, which have been regularly settled in the mode provided by law, are to be taken as prima fade correct. They are liable to be impeached on specific grounds of surcharge or falsification to be alleged in the bill, but the court will not decree an account upon a general allegation that the settled accounts are erroneous. This rule not only results from the presumption which the law makes in favor of the correctness of a settled account, but it is necessai’y to prevent surprise to defendants, and to give them the advantage of their answer, to which they are entitled, on the principles which govern equity practice. When an account has been ordered upon a proper bill, an additional objection to the settled accounts may be discovered in the progress of the case. It would be attended with inconvenience and delay to require the plaintiff in any such case to amend his bill for the purpose of alleging the additional objections. It will save time and expense, and generally be attended with no inconvenience to allow the plaintiff to raise the objection before the commissioner with a proper specification in writing, and to allow the defendant to meet the objection by an affidavit, giving to the affidavit the same weight which would have been given to an answer if the matter had been alleged in the bill. This is the full extent to which the settled rule of practice can be safely and conveniently relaxed, and this is the extent to which, as I understand it, Judge Stanard meant to go in Shugart’s adm’r v. Thompson’s adm’r, 10 Leigh 434.
The executors, however, made no objection in the Circuit court to the decree for an account. In the argument here by one of the executors, he insisted that’ *466 all the allegations in the answer of the executors, should be taken to he true, unless disproved, and alleged that such was the understanding in the Circuit court. This was not assented to by the counsel for the plaintiff, and there is no evidence in the record of any agreement to that effect. The counsel for the plaintiff iusisted that the affirmative allegations of the answer could not be received as true, unless sustained by proof. When this ground was taken by counsel for the plaintiffs in the argument, the counsel for the executors raised an objection, for the first time, to the sufficiency of the bill.
The bill, however, calls upon the executors to render an account of all their actings and doings as executors, and the allegations of' their answer, though affirmative, must be taken as true unless disproved, so far as they relate directly to the account which they are there required to give. Fant v. Miller & Mayhew, 17 Gratt. 187. There are allegations in the answer, however, which relate to matters not directly involved in, or explanatory of, this account, and therefore, perhaps, not within the scope of the discovery sought by the bill, though having a relation to the subject matter of the account, and important to a correct understanding of the motives of the executors and of the circumstances under which they acted. It may be doubtful how far such allegations of collateral matter ought to be received as true, within the rule laid down in Fant v. Miller & Mayhew.
■ But even if we should give credit to any allegation of matter of fact contained in the ansAver, the state of the case will still be deficient in some important particulars. Thus it is important that we should know Avhat was the real value of the Leigh street lots. The appraisement put the value at $68,000 in Confederate money. But obviously, the appraisement cannot be relied upon, for at the sale made about two weeks aftenvards, the lot brought $128,000. The conclusion must be, either that the property sold for a great deal more than it *467 was worth, which is not probable, or that the appraisement was far below the true value. So it is important to know what was the value of Confederate treasury notes when the collections of principal money were made from Morris and Bradford, and also to what extent such notes were then available, according to the common usages of business in Richmond, for the payment of debts payable in specie, and well secured on real estate, or for the purchase of property or otherwise. The court cannot take judicial notice of such facts, and there is no proof in respect to them.
The purchasers of the Leigh street lots, as well as Morris and Bradford, should also have been made parties to the bill, in the absence of any declaration on the part of the plaintiff that he did not intend to hold them reponsible. It is the policy and practice of courts of equity not to do justice by piecemeal.
The case must, therefore, go back for the purpose of making these parties, and of ascertaining the facts suggested. When the case comes on to be heard, all the allegations of fact in the answer, whether bearing directly upon the matter of the account or not, should be taken to be true, so far as they may not be disproved, unless the plaintiff shall elect to amend his bill, by alleging his objections to the settled accounts, with proper specifications, according to the established course of pleading in such cases. If he does that, the weight due to the answer which may be filed can be easily estimated. If he chooses not to amend his bill by setting out the specific objections, he cannot complain if the answer is taken as true in all its parts unless disproved, or require the court to make nice dis■criminations between those allegations which, by the rules of evidence, are to be taken as true and those which are not. He will have no right to hold the defendants to the rules of pleading, when he has disregarded them himself.
*468 I proceed now to consider the questions raised upon the construction of the will of Nicholas Mills, dec’d, as far as they were decided by the Circuit court, not including, of course, any question relating to matters in respect to which the case is to go back.
The Circuit court held that the bequests made in the 4th clause of the will in favor of the testator’s daughter,-. Sarah Ann Robinson and her family are to be regarded as demonstrative, and not specific. The distinctions between these two descriptions of legacy are well understood, but it is often very difficult to determine whether a particular case belongs to one class or to the other. The cases present very nice distinctions, but they need not be discussed. It will be sufficient to' refer to them as collected and classified in 1 Roper on Legacies, in 2 Redfield on Wills, and in the notes to Ashburner v. Macguire, 2 Lead. Ca. Eq. Referring to these books for the cases and doctrine laid down by them, I will mention only one rule, which is important to be borne in mind, namely, that a legacy will not be construed to be specific unless it appears clearly to have been so intended.
The first bequest made in this clause is of “the sum of $1,080 per annum, payable semi-annually, being the interest on the purchase money of the real estate on Main street, Richmond, sold by me to Charles Y. Morris.” This language does not import a bequest of the annual interest of a debt due to the testator from Morris. It imports, in express terms, a bequest of a sum of money. It refers to the purchase money of the sale to Morris as a fund whose annual interest will provide for the- annual payment. It could not be discovered from the will that the money was still due from Morris. It was, in point of fact, still due from him at' the date of the will, but if the whole of it had been subsequently collected by the testator, as part of it was, the fund might still have been described as “ the *469 purchase money” of the lot sold to Morris. The description employed did not have reference to the existing shape of the fund, but to the source from which •it arose. The collection of the whole of Morris’ debt, therefore, would not have extinguished the fund described, and therefore the collection of part did' not extinguish it pro tanto. Precisely the same remarks apply to the succeeding bequests of $450 and $540 per annum. And in relation to the bequest of $1,080 per annum, it is to be remarked that it is directed to be paid semi-annually, while the bonds of Morris, which are in the record, contain no provision for. semi-annual payments of interest. The testator may have forgotten at the moment of ¡making the will that Morris’ bonds did not provide, as Hyman’s seems to have done, for semi-annnal payments of interest. If he did not then labor under a false impression, the circumstance referred to is conclusive to show that he did not intend a bequest only of the interest on Morris’ debt.
The deeds show that the consideration of the sale to Hyman, on the 25th day of September 1861, was $8,000, while the sum secured by the deed of trust of the same date is only $3,000; so that $5,000 of the purchase money must have been paid. These deeds were executed only three weeks before the date of the will, and such facts were not likely to escape the memory of the testator. If $3,000 was the whole amount due from Hyman at the date of the will, as seems to have been the case, the fact is conclusive to show that the interest on Hyman’s debt was not the subject of the bequest.
The same observations apply to the bequests, after the death of Mrs. Robinson, of the principal sums of $18,000, $7,500 and $9,000. The legacies of these several sums, therefore, as well as of the several annual sums of $1,080, $450 and $540, during the life of Mrs. Robinson, are not specific, but demonstrative; thatisto say, they are general legacies, with reference to certain *470 particular subjects as the primary fund to satisfy them.. The subsequent collection by the testator of a large ■ part of these funds did not have the effect of diminishing the provision made for Mrs. Robinson and her family, as it would if the bequests were held to be specific. ’ It could hardly have been the intention of the testator that by these subsequent collections the provision made for this branch of his family, which seems to have been , wholly dependent upon his bounty, should be diminished.
Then, as to the bequest of the “ sum of $300 per annum, payable semi-annually, being the interest on $5,000 of State stock of Virginia,” and the subsequent bequest of “$5,000 in Virginia State stock.”
These bequests do not apply to any particular “$5,000 of State stock,” nor are they made dependent upon the-testator’s being possessed of that amount of State stock at the time of his death. The' bequests are therefore not specific. See the cases collected in 1 Roper on Leg., 205-210. They are general legacies, but they are not demonstrative, because no particular fund is referred to for their satisfaction.
The bequest, after the death of Mrs. Robinson, of “$5,000 in Virginia State stock,” is a little ambiguous, and the question arises whether the testator intended to give $5,000 worth of State stock, or as much State stock as $5,000 would buy, or only to give a quantity of State stock of the nominal value of $5,000. The intention seems to be rendered plain by construing this bequest in connection with the previous bequest of “$300 per annum, being the interest on $5,000 of State stock of Virginia.” The $5,000 in State stock given over after the death of Mrs. Robinson is the same fund referred to in the previous clause as producing $300 per annum interest. This shows that the intention was to give stock of the nominal value of $5,000, according to- *471 its face, and not give as much stock as would amount in real value to $5,000 in money.
Then a further question arises, whether Mrs. Bobinson.and family are entitled to receive the sum of $300 mr annum for life, whether the $5,000 of State stock will yield it or not.
I infer that the testator had, in the arrangement of his testamentary plans, appropriated in his mind, as the portion of Mrs. Bobinson and her family, the three houses in Bichmond, which he sold shortly before the date of his will to Morris, Hyman and Bradford, together with $5,000 of State stock. In his will, therefore, he appropriates to them $5,000 in stock, and also the funds arising from the sales of three houses. The interest on the stock and the interest on these funds are given to Mrs. Bobinson and family for life, and the stock and funds are to go over after her death. The $5,000 of State stock is the fund which is to produce the $300 per annum. Mrs. Bobinson and her family, therefore, cannot getthe$300_peranwim unless the $5,000 of State stock will yield that sum in interest. They will receive whatever interest the stock may pay, which cannot exceed sixy>er cent., and any arrears unpaid will be due to them,.to be received whenever the State maybe able to pay them. The fund here referred to, though spoken of as stock, consists of bonds or certificates of debt of the State of Virginia, bearing six per cent, interest. It doubtless never entered into the mind of the testator that any contingency would happen in which this interest would not be regularly and fully paid.
In the execution of this clause of the will, therefore, it will be the duty of the executors to invest the sum of $34,500 (being -the aggregate of the several sums of $18,000, $7,500 and $9,000) out of the general assets, and to set apart out of the Virginia State stock left by the testator as much as, on its face, represents the nominal amount of $5,000. This money and stock will *472 constitute the fund, of which the interest will he applicable to the support, &c., of Mrs. Robinson and her children, &c., during her life, and the capital divisible among her children and descendants after her death. Eor the raising of the said sum of money, the several ° ^ funds of purchase money mentioned in the will, will be Primarily liable, if that should become important,
It appears from the report of the commissioner, that Fannie M., a daughter of Mrs. Robinson, intermarried witk Edward T. Robinson after the death of the testator, and has since died without leaving issue, and leavjng ]ier surviving. The Circuit court held that- the children of Mrs. Robinson, living at the death of the testator, did not take vested interests in remainder in the fund provided by the fourth clause, and that Edward T. Robinson in the right of his wife, of whom he is administrator, is not entitled to any interest in the said fund. That is the question raised by the second appeal.
It is a familiar principle, that the law favors the vesting of estates, and where a legacy is given, which is not to be enjoyed in possession until some future period or event, i’t will, where no special intent to the contrary is manifested in the will, be held to be vested in interest immediately on the death of the testator, rather than contingent upon the state of things that may happen to exist at the period of payment or distribution. Catlett & ux v. Marshall & als., 10 Leigh 79; Martin v. Kirby, 11 Gratt. 67; Brent v. Washington’s adm’r, 18 Gratt. 526; Doe v. Considine, 6 Wall. U. S. R. 458. And the question is, whether a special intent is manifested in this will, that the legacy in remainder, after the death of Mrs. Robinson, shall vest only at her death in such children and descendants of deceased children as may happen to he then living.
• I think that no such special intent is manifested in the will, and that the children of Mrs. Robinson, who *473 were living at the death of the testator, took immediate vested interests subject to be divested in the events described. See Skey v. Barnes § als., 3 Meriv. R. 335; Leeming v. Sherriatt, 2 Hare’s R. 14; Salisbury v. Petty, 3 Hare’s R. 86; Sturgiss v. Pearson, 4 Madd. R. 411; Brent v. Washington’s adm’r, 18 Gratt. 526; Parker v. Golding, 13 Sim. R. 418.
The interest of Mrs. Hannie M. Eobinson was not divested in favor of descendants, because sbe left none. It was not divested in favor of the surviving brothers and sisters, because she did not die under age and unmarried, and without issue. An estate once vested will not be divested, except upon the occurrence of the very event described. Harrison v. Foreman, 5 Ves. R. 207; Sturgiss v. Pearson, 4 Madd. R. 411. The provision in favor of the surviving brothers and sisters, imports, according to the natural sense of the words, that all three of the conditions must exist in order to entitle them to take; and such is the settled construction in such cases. Doe v. Cooke & al., 7 East R. 269; Doe v. Rawding, 2 Barn. & Ald. R. 241.
The construction which I put upon the 4th clause is sustained by the 6th clause. This clause provides that, upon the marriage or attaining to the age of twenty-one of any child of Mrs. Eobinson in her lifetime, she may make an advancement to' such child, not exceeding “ such child’s portion of the said trust fund.” This recognizes the title of such child to a portion of the fund, which could not be if the interest is to vest only on the death of Mrs. Eobinson in such of her children as may be then living. The provision authorizing Mrs. Eobinson to prescribe “ terms, trusts, conditions and limitations” to such advancement, only indicates the prudent forecast of the testator, and his desire that such arrangements might be made for the benefit and protection of the child as Mrs. Eobinson should think ne *474 cessary or expedient. This construction makes the 6th-clause entirely consistent with the 4th.
It follows, therefore, that Edward T. Eobinson, as adm’r of his deceased wife, Nannie M. Eobinson, is entitled to her interest in remainder after the death of her mother, in the fund created by the 4th clause of the will.
The decree should be reversed, and the cause remanded for further proceedings.
The other judges concurred in the opinion of Joynes, J.
The decree in the first two causes was as follows:
The court is of opinion, for reasons stated in writing, and filed with the record, that the said Circuit court, instead of proceeding to make a decree upon the merits of the said first mentioned cause of Corbin v. Mills’ ex’ors & als., should have required the plaintiff to amend his bill, so as to make Charles Y. Morris and Thomas Bradford, and the purchasers of the Leigh street lot, parties defendant; and after the said parties had been brought before the court, should have allowed all the pai’ties to take new evidence, and should, if the state of evidence made it proper, have directed an enquiry by a commissioner to ascertain what was the true value of the Leigh street lot at the time of the sale thereof by the executors, and what was the average value of said property, in fee simple, in ordinary times, before the commencement of the late war; and also to ascertain what was the value of Confederate treasury notes, as compared with specie, at the several dates at which the executors received from Charles Y. Morris and Thomas Bradford payments in said notes on account of the principal money due from them respectively to the testator at the time of his death; and to what extent said treasury notes were at said several times available, according to the common usages of business in *475 Richmond, for the payment of debts payable in specie, and well secured on real estate, or for the purchase of property or otherwise.
The court is further of opinion that, according to the true construction of the fourth clause of the will of Nicholas Mills, deceased, the bequest therein of the several sums of $1,080, $450 and $540 per annum to Sarah Ann Robinson for life, were not specific legacies of the interest, payable on certain debts, but were demonstrative legacies; that is to say, they were general legacies, payable out of the general assets, but with an appropriation of certain subjects as the primary fund for their satisfaction; and that the bequest of the several sums of $18,000, $7,500 and $9,000, after the death of said Sarah Ann Robinson, were in like manner demonstrative and not specific legacies.
The court is further of opinion that the bequest, after the death of the said Sarah Ann Robinson, of $5,000 in Virginia State stock is a general legacy of bonds or certificates of debt of the State of Virginia, of the nominal amount of $5,000 on their face, and that the bequest of $300 per annum to said Sarah Ann Robinson for life, is a bequest of the interest payable on said $5,000 of bonds or certificates, and that in case of any failure of the State to pay interest on said bonds or certificates, the said annual sum of $300 is not to be made up out of the general assets.
The court is further of opinion that the children of Sarah Ann Robinson, who were living at the death of the testator, took immediate vested interests in remainder, after the death of the said Sarah Ann- Robinson, in the property mentioned in said clause; and that the share thereof, which so vested in Eannie M.Robinson, who intermarried with Edward T. Robinson, passed on her death to her said husband surviving, as her administrator. Therefore, it is decreed and ordered, that the decree in each of these causes be reversed and an *476 nulled, and that the appellants, in the first of the said causes, do pay unto the appellees therein, respectively, their costs by them expended in the cause; and that the executors of Nicholas Mills, deceased, out of the assets in their hands, pay to the appellant in the second cause his costs expended in the prosecution of the appeal here. And it is ordered that these causes be remanded to the said Circuit court for further proceedings, in accordance to the foregoing opinion and decree.
The decree in the third cause was as follows:
The court is of opinion that, while the court will take judicial notice of the fact, that on the thirtieth day of Api’il 1863, the date of the transaction which is the subject of controversy in this cause, the treasury notes of the United States, and also the treasury notes of the Confederate States, were greatly depreciated in value, as compared with specie, it is not competent for the court to take judicial notice of the rate of depreciation of either currency at any particular time, nor of the extent to which, at any particular time, the treasury notes of the Confederate States were available, according to the common usages of business, for the payment of debts contracted before the war and payable in specie, or in current money of the United States, or for the purchase of property or otherwise.
The court is further of opinion, that inasmuch as the record in this cause contains no evidence upon these points, or either of them, it does not contain sufficient materials to enable the court to make a proper decision upon the questions in controversy. The court is therefore of - opinion that the said Circuit court, instead of proceeding to make a decree upon the merits of the controversy in the existing state of the record, should have directed an enquiry by a commissioner, to ascertain what was, on the thirtieth day of April 1863, the value, as compared with specie, of the treasury notes of the United States, and also of the treasury notes of *477 the Confederate States, and to what extent, at that time, the treasury notes of the Confederate States were, according to the common usages of business in Richmond, available for the payment of debts contracted before the war and payable in specie or in current money of the United States, and well secured on real estate, or for the purchase of property or otherwise, with leave to any of the parties to file additional evidence, as they may be advised, upon any matter involved in the cause, and that the said decree is therefore erroneous.
Therefore, it is decreed and ordered that the said decree he reversed and annulled, and that the appellees, the executors of Nicholas Mills, dec’d, out of the assets in their hands, pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And the cause is remanded to the said Circuit court for further proceedings to be had therein, in conformity with the foregoing opinion and decree.
Decrees reversed.